HERBERT L. SPERLING and JANICE SPERLING, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sperling v. Commissioner
Docket Nos. 6112-79, 15025-79
United States Tax Court
T.C. Memo 1982-681; 1982 Tax Ct. Memo LEXIS 67; 45 T.C.M. (CCH) 193; T.C.M. (RIA) 82681; November 23, 1982. Thomas A. Condon, for the petitioners. Vincent R. Barrella, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge:* Respondent determined the following deficiencies in petitioners' Federal income taxes: *68 Year
Deficiency
1974
$4,650.09
1975
9,739.02
1976
8,473.00
The issues for decision are whether payments of (1) college expensesor (2) insurance premiums pursuant to a separation agreement between petitioner husband and his former wife are deductible as alimony under section 215. [1] Respondent has conceded on brief that if the college expenses are found to constitute child support, petitioners are entitled to claim one dependency exemption in 1974 and two dependency exemptions in 1975 and 1976. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and the exhibits attached thereto and the supplemental stipulation of facts are incorporated herein by this reference. Petitioners' residence at the time the petitions were filed was New City, New York. Petitioners timely filed joint individual income tax returns for the years in issue with the District Director of Internal Revenue in Holtsville, New York. Janice Sperling is a party to this proceeding *69 solely by virtue of having filed joint returns with Herbert L. Sperling (petitioner). Petitioner married his former wife, Phyllis C. Sperling, on May 24, 1953, and the couple were residents of the State of New York during their marriage.Three children were born of this marriage: Robin Jill Sperling, born August 18, 1955; Cindy Joy Sperling, born August 20, 1957; and Lawrence David Sperling, born August 4, 1959. Sometime prior to early 1966, petitioner and Phyllis Sperling began experiencing marital difficulties. They retained separate law firms to represent them in the negotiations of their separation and divorce. On March 30, 1967, a Judgment of Separation between them was entered at a Special Term of the Supreme Court of the State of New York. The relevant portions of the Judgment of Separation provide: that the * * * [wife] is entitled to the general custody of the three children * * * that the * * * [husband] pay to the * * * [wife], during the life of the * * * [wife], or until the further order of this court, the sum of $644.23 per week * * * for the support and maintenance of the * * * [wife] and the support, maintenance and education of the infant children *70 of the parties * * *. that the * * * [husband] shall maintain each of his children who qualifies for entrance at a college to be selected jointly by the * * * [husband] and the child who is to attend such college for a period of four years. During the said four years the * * * [husband] shall pay all fees for tuition, laboratory, residence and books which may be required and necessary * * * that the * * * [husband] shall continue to maintain * * * [several enumerated life insurance policies on the life of the husband and] shall pay the premiums necessary to keep these policies in full force and effect, and shall not borrow against the cash value of any of them except against the cash value of Policy No. 43359, in order to have the proceeds of the loan applied against the premium of the said policy. So long as the * * * [wife] remains unmarried and any of the children is under the age of twenty-one years, or has not completed his or her education, the * * * [wife] shall be the beneficiary of the said policies. If the * * * [wife] should remarry, the children, or such of them as shall be under the age of twenty-one years, or shall not have completed their education, *71 shall be the beneficiaries, in equal shares, of the said policies. If the * * * [wife] should remarry and if all of the children shall be over the age of twenty-one years and shall have completed their education, the said policies shall be transferred and delivered to the * * * [husband] who shall thereafter have complete control thereover, and it is further ORDERED AND ADJUDGED, that for the purpose of carrying out the provisions of this decretal paragraph, ownership of said policies shall be transferred to David Coral, Esq. and Milton Kail, Esq., who shall hold such policies as trustees, in accordance with the terms hereof. The * * * [husband] may substitute any practicing attorney with offices in the City of New York or the County of Rockland for David Coral, Esq., as a joint trustee of the said policies, and the * * * [wife] may substitute any practicing attorney with offices in New York City or Rockland County for Milton Kail, Esq., as a joint trustee of the said policies * * * [Emphasis supplied.] Phyllis Sperling was the owner of the insurance policies prior to their transfer to the trust. Neither petitioner nor Phyllis Sperling could exercise any *72 rights in regards to the policies while they were in trust, except for the limited right to borrow against Policy No. 43359 held by petitioner.
On August 25, 1967, petitioner and Phyllis Sperling entered into a written separation agreement. The separation agreement recites that the Judgment of Separation awarded custody of the three children to the wife and "also provided for certain rights of visitation to the Husband and * * * granted alimony to the Wife for her support and the support and maintenance of the children of the parties as well as other financial awards." The operative provisions of the separation agreement include the following: 3. It is hereby affirmed and agreed in accordance with said Judgment that the right of custody and possession of the children shall remain solely with the Wife and the Wife hereafter shall be responsible for the supervision, maintenance, education, support, control and care of said children, except as specifically provided otherwise herein. [Emphasis supplied.] 6. The parties hereto agree that as provided in said Judgment, the Husband shall make payment to the Wife of the sum of $644.23 per week * * * for the support and maintenance *73 of the Wife and the support, maintenance and education of the infant children of the parties, and further agree that as each child shall attain the age of twenty-one (21) years, sooner dies or becomes self-supporting, the said sum of $644.23 per week shall be reduced by $125. for each child attaining the age of 21 years, sooner dying or becoming self-supporting, and do further agree that in the event that the parties hereto shall be divorced and that the Wife shall remarry, the said sum of $644.23 shall be reduced by the sum of $269.23 per week. 14.That except as herein modified by this agreement, all the terms and conditions of the aforesaid Judgment of Separation shall remain in full force and effect. 17. The parties hereby agree that this instrument contains the whole agreement between said parties and that there are no conditions, understandings, promises, representations or considerations of any nature whatsoever except as expressed herein. On August 30, 1967, petitioner and Phyllis Sperling secured a judgment of divorce from the State of Chihuahua, Republic of Mexico. The separation agreement was incorporated but not merged into the divorce decree. On April 22, 1968, petitioner *74 and Phyllis Sperling entered an agreement that substituted Phyllis Sperling's new attorney as a trustee of the insurance trust established pursuant to the Judgment of Separation. Phyllis Sperling was remarried on June 6, 1975, and on July 28, 1975, the primary beneficiary of each insurance policy listed in the Judgment of Separation was changed to the three children of petitioner and Phyllis Sperling. On September 30, 1981, in accordance with the terms of the Judgment of Separation, ownership of the policies was transferred to petitioner, who subsequently cashed them in and received $19,008.73 as the proceeds. In 1974, petitioner's elder daughter, Robin, attended Northwestern University, and petitioner paid her tuition and college expenses in the amount of $5,190.33. Petitioner also paid $3,384.43 in life insurance premiums in 1974. In 1975, petitioner's younger daughter, Cindy, also enrolled in Northwestern University, and petitioner paid a total of $14,582.41 in tuition and other college expenses as well as $4,734.37 in life insurance premiums. In 1976, petitioner paid $12,965.90 in tuition and other college expenses and $3,433.10 in insurance premiums. The tuition payments *75 were paid directly to the university. The premiums paid were for the policies held by the trust established under the Judgment of Separation. All of the foregoing payments were deducted as alimony in the years paid, along with other amounts not here in dispute. These deductions were disallowed by respondent in his statutory notices of deficiency dated February 8, 1979, and September 6, 1979. ULTIMATE FINDINGS OF FACT (1) Phyllis Sperling did not have an obligation to pay for her children's college education. (2) The obligation to pay college expenses for petitioner's children was imposed upon petitioner by the separation agreement and by the divorce decree. (3) Petitioner's payment of insurance premiums pursuant to the separation agreement did not provide Phyllis Sperling with an economic benefit. OPINION Petitioner seeks to deduct as alimony college expenses and insurance premiums paid pursuant to the separation agreement executed by petitioner and Phyllis Sperling. Section 215 [2] requires as a condition precedent for deductibility that the amounts claimed as deductions be includable in the divorced spouse's income under section 71. [3] It is necessary, therefore, *76 to determine the proper treatment of the payments by Phyllis Sperling, even though she is not a party to this action, in order to determine the proper treatment of the payments by petitioner. *77 The College Expenses
Petitioner advances two separate arguments in support of his claim that the tuition payments and other college expenses are taxable to Phyllis Sperling and so deductible by him. First, petitioner argues that the payments are not specifically fixed by the separation agreement as child support as required by section 71(b), and that they are therefore alimony under the rule of Commissioner v. Lester,366 U.S. 299 (1961). Second, petitioner asserts that Phyllis Sperling has a moral and legal obligation to finance their children's college education, and that by paying the tuition himself, as he was required to do by the separation agreement, he relieved her of a legal obligation and thus conferred upon her an economic benefit taxable to her and deductible by him. Petitioner has submitted evidence extrinsic to the agreement in an effort to demonstrate petitioner's and Phyllis Sperling's alleged intent to have the payments now in controversy taxed as alimony. Respondent objected to this evidence at trial on the basis that the separation agreement and divorce decree represent the complete and unambiguous agreement between the Sperlings, and *78 the Lester case forbids the introduction of extrinsic evidence on intent to determine whether payments are alimony or child support. In the Lester case, the Supreme Court was considering a provision for payments that were potentially allocable between the wife as alimony and the children as child support. The Court concluded that "to come within the exception portion of * * * [the predecessor to section 71(b)], the agreement providing for the periodic payments must specifically state the amounts or parts thereof allocable to the support of the children." Commissioner v. Lester,supra at 301. The Court went on to say: One of the basic precepts of the income tax law is that "[t]he income that is subject to a man's unfettered command and that he is free to enjoy at his own option may be taxed to him as his income, whether he sees fit to enjoy it or not." Corliss v. Bowers,281 U.S. 376, 378 (1930). Under the type of agreement here, the wife is free to spend the monies paid under the agreement as she sees fit. "The power to dispose of income is the equivalent of ownership of it." Helvering v. Horst,311 U.S. 112, 118 (1940). *79 * * * All of these considerations lead to the conclusion that if there is to be certainty in the tax consequences of such agreements the allocations to child support made therein must be "specifically designated" and not left to determination by inference or conjecture. * * * [Emphasis supplied.] Commissioner v. Lester,supra at 303, 304, 306. The Lester case has subsequently been held to stand for two separate substantive rules of law: (1) To be excludable from income as child support, such payments must be specifically "fixed" as a sum certain or a percentage of a payment [4] and (2) extrinsic evidence designed to alter the language of a divorce decree or separation agreement will not be considered in determining whether payments made thereunder constitute alimony or child support where the character of such payments is specifically fixed by the decree or agreement. Estate of Craft v. Commissioner,68 T.C. 249, 263-264, affd. 608 F.2d 240 (5th Cir. 1980); Giordano v. Commissioner,63 T.C. 462 (1975); Grummer v. Commissioner,46 T.C. 674 (1966). *80 Petitioner argues that the first Lester rule applies here to render the tuition payments deductible as alimony because the payments were not specifically labeled "child support" in the separation agreement. Petitioner would then, however, have the Court conclude that the second Lester rule is inapplicable here because petitioner seeks not to "alter" the separation agreement with his extrinsic evidence but merely to "explain" that the provision for college expenses, which does not call the payments "child support," was intended to be an alimony provision. Respondent argues that the first Lester rule requiring a specific designation of child support does not apply in this situation, where the payments in controversy are not to be apportioned among wife and children but instead are wholly paid on behalf of the children. According to respondent, the second Lester rule applies here, however, to exclude extrinsic evidence of intent. Resort to the rule of Lester requiring strict specificity of the amounts payable as child support is not necessary when an amount is payable in its entirety (or 100 percent) on behalf of the child, and totally bypasses any right of *81 participation or control by the nonpaying parent. Although the separation agreement here did not use the term "child support," or a similar phrase, to describe the payments for college expenses, such payments were to be used solely for education of the children. They could not be used for any other purpose at the instance of Phyllis Sperling or anyone else. The situation with which the Lester case was concerned -- where the wife has unfettered control over use of the payments -- is not present here because, under the separation agreement, the money went directly to the educational institution and petitioner was the only parent with the legal right to exercise any control over the payments. The fact that a precise sum or percentage was not specified in the agreement is unimportant if the entire amount, whatever it may be, is to be devoted to the support of the children. The total payment need not be numerically fixed. See Abramo v. Commissioner,78 T.C. 154, 161 (1982). Petitioner and respondent disagree on the applicability and correctness of the holding in the very similar case of Marshall v. Commissioner,T.C. Memo. 1976-34. In that case, *82 the support order provided, as does the separation agreement in this case, that the husband was to pay a sum certain to the wife for her support and the support of the children. In addition, as here, the husband was to pay certain expenses, specifically "all expenses of home, all medical and dental and all college expenses." [Emphasis supplied.] The Court found that the husband's obligation to pay the medical, dental, and college expenses was sufficiently designated as child support to exclude the payments from the wife's income. The Lester case was said to focus on a situation in which a wife received "an aggregate sum which she was free to apply to whatever purposes she so chose. * * * This freedom does not inhere in payments to cover specific expenses incurred on behalf of the * * * children." We believe that the same reasoning dictates the conclusion here that petitioner's payments of his children's college expenses do not constitute alimony. Petitioner's second argument, that his payment of college expenses of the children satisfied an obligation of Phyllis Sperling, is not supported by the evidence. He relies on an assertion that "her moral obligation as a parent *83 and even more so as the custodial parent to provide for the education of her children is self-evident." He cites Lord v. Lord,96 Misc.2d 434, 409 N.Y.S.2d 46 (1978), for the proposition that both parents have an obligation to support their children and that such obligation may, in exceptional circumstances, include provision of a college education even after the child attains the age of 21. [5] As petitioner points out, in the Lord case at least one of the children was already attending college when the issue arose, and substantial evidence about the socioeconomic background of the parties justified the conclusion that it would be unusual and detrimental for the Lord children not to go to college. We do not have adequate evidence here from which to determine that, under New York law, either *84 parent was obligated to provide a college education for the children absent the Judgment of Separation, which specifically imposed that obligation on petitioner. Petitioner misplaces reliance on Christiansen v. Commissioner,60 T.C. 456 (1973); Lehman v. Commissioner,17 T.C. 652 (1951); and Faber v. Commissioner,264 F.2d 127 (3d Cir. 1959). In none of those cases were the payments made for the benefit of minor children of the parties; they could not, therefore, be characterized as child support not includable as alimony under section 71(b). See sec. 1.71-1(e), Income Tax Regs.
In view of the fact that the character of the payments in question is unambiguously fixed as child support by the separation agreement, the second Lester rule applies to exclude the extrinsic evidence offered by petitioner. [6]Giordano v. Commissioner,supra;Grummer v. Commissioner,supra at 679. *85 The Insurance Payments
Petitioner relies on Stevens v. Commissioner,439 F.2d 69 (2d Cir. 1971), revg. a Memorandum Opinion of this Court, stating: The petitioners are cognizant of the fact that the majority rule regarding the deductibility of insurance premiums as alimony is contrary to the Stevens decision and that the Tax Court does not follow Stevens in other circuits. However, under the case of Jack E. Golsen,54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971) the rationale promulgated by the Second Circuit Court of Appeals in Stevens must be applied in this case. We of course, applying Golsen v. Commissioner,54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), follow the Stevens case here. It does not, however, support petitioner's position. In the Stevens case, the husband was required by the divorce decree to post life insurance policies as security for the alimony payments. The husband purchased the policy and named his former wife as beneficiary of that amount still due under the alimony agreement. Any excess benefits would go to their children. *86 If the wife predeceased the husband, or if the husband did not die during the alimony period, the children or their estates would be the beneficiaries of the policy. Ownership of the policy was assigned to the wife.
In the Stevens case, the Court began its analysis by stating: While absolute assignment of policy ownership is a condition necessary to constructive receipt of any benefit purchased by premium payments, absolute assignment alone is not a sufficient basis for deductibility. * * * Stevens v. Commissioner,supra at 71. The Court's conclusion that the premium payments were alimony was predicated upon the findings that (1) the wife was the absolute owner of the policy and the husband had "divested himself of the power to change the beneficiary, to borrow against the policy or to surrender the policy for its cash value" (439 F.2d at 72) and (2) because the children would be substituted as beneficiaries if the wife predeceased the husband, the wife was, in essence, an irrevocable beneficiary of the policy. Neither of the prerequisites to deductibility identified in the Stevens case is present here. See also Brodersen v. Commissioner,57 T.C. 412 (1971), *87 and Wright v. Commissioner,62 T.C. 377, 398-399 (1974), affd. 543 F.2d 593 (7th Cir. 1976), where we distinguished the Stevens case and also expressed our disagreement with its conclusion. Phyllis Sperling did not receive absolute ownership of the policies. She owned the policies before the separation, and she gave up her ownership to the trust established pursuant to the separation agreement. She cannot be deemed to be the irrevocable beneficiary of the policies because the agreement provided for her or her children to be the beneficiaries only so long as she remained unmarried or any of the children was under the age of 21 or had not completed his or her education. As a result of the transfer to the trust, petitioner acquired a beneficial interest in the policies he did not previously have -- specifically, the right to the cash surrender value. (In fact, the policies were ultimately transferred from the trust to petitioner and he received the cash value.) Phyllis Sperling derived no significant economic benefit from petitioner's payment of the insurance premiums, and the amounts thereof are not includable in her income under section *88 71(a). The payments therefore are not deductible by petitioner under section 215. Conclusion
Petitioner's brief complains of inadequate specification of respondent's position in the notice of deficiency, in the answer to the petition, and in respondent's trial memorandum. The statements of respondent at each stage were adequate notice of the basis for disallowance of the deductions claimed by petitioner. If he required greater detail, however, petitioner had procedural remedies that he failed to utilize. He has not been prejudiced and is entitled to no relief on this ground. Because, as respondent concedes, petitioner is entitled to one dependency exemption in 1974 and two dependency exemptions in 1975 and 1976, Decision will be entered under Rule 155.
Footnotes
*. By order of the Chief Judge, this case was reassigned from Judge Sheldon V. Ekman, deceased, to Judge Mary Ann Cohen↩ for disposition.
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
2. The relevant portion of sec. 215 provides: (a) General Rule.--In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. * * * ↩
3. The relevant portions of sec. 71 provide: (a) General Rule.-- (1) Decree of divorce or separate maintenance.--If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. (b) Payments to Support Minor Children.--Subsection (a) shall not apply to that part of any payment which the terms of the decree, instrument, or agreement fix, in terms of an amount of money or a part of the payment, as a sum which is payable for the support of minor children of the husband. For purposes of the preceding sentence, if any payment is less than the amount specified in the decree, instrument, or agreement, then so much of such payment as does not exceed the sum payable for support shall be considered a payment for such support.↩
4. See, e.g., Barrer v. Commissioner,T.C. Memo. 1981-256; Kauffman v. Commissioner,T.C. Memo. 1979-376; Zettlemoyer v. Commissioner,T.C. Memo. 1978-246↩.
5. Because this case was decided over 10 years after the operative agreement and judgment in this case and expressly reflects recognition of changing standards, petitioner cannot claim that Phyllis Sperling or her counsel were deemed to have knowledge of such obligation. Similarly unhelpful is reference to a change of New York statutory law occurring in 1980.↩
6. If the Court were to consider the evidence, however, the outcome would be the same. The evidence proffered -- testimony by the attorneys who negotiated the separation agreement, affidavits executed by petitioner and Phyllis Sperling months before the agreement was executed, and the transcript of a court proceeding wherein the agreement was adopted -- does not demonstrate that the payments were intended at the time of the final agreement to constitute alimony or that Phyllis Sperling affirmatively assumed the obligation to send her children to college.↩